UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**CHERYL R.,**[1]

       Plaintiff,

v.

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

       Defendant.

Case No. 6:18-cv-01531-MK

**OPINION AND ORDER**[2]

**KASUBHAI, Magistrate Judge:**

## INTRODUCTION

Cheryl R.[3] ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for Title II disability and disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Both parties consented to full jurisdiction by a U.S. Magistrate Judge. ECF No. 5. Pursuant to Standing Order 06-mc-9130, the United States consented to jurisdiction by a U.S. Magistrate Judge. *Id*.

[3] The ALJ opinion in this matter referred to Plaintiff by her first name and prior last name, which was identified as beginning with the letter "E." Tr. 55. The ALJ opinion referenced a Social Security Number in this matter, (*id.*), of which the last four digits match the Social Security Number referenced in Plaintiff's complaint, Compl. 2, ECF No. 1. Plaintiff's complaint identifies Plaintiff's last name as beginning with the letter "M," but Plaintiff does not argue that the ALJ opinion refers to the wrong Plaintiff. *Id.* at 1. The Court construes that the Plaintiff in the ALJ opinion and in Defendant's filings is the Plaintiff identified in Plaintiff's complaint, despite the difference in last names and the lack of instruction from counsel.

PAGE 1—OPINION AND ORDER

insurance benefits, and Title XVI Supplemental Security Income ("SSI") under 42 U.S.C. §§ 1381a and 1382c(a)(3)(A). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is affirmed.

## ADMINISTRATIVE HISTORY

Plaintiff applied for a period of Disability and Disability Insurance Benefits ("DIB") under Title II on November 19, 2013, and for supplemental security income under Title XVI on November 19, 2013, alleging disability beginning October 22, 2010. Tr. 55[4]; Pl. Br. 1, ECF No. 17. The agency denied the claims both initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 55. Plaintiff appeared for a hearing before Administrative Law Judge ("ALJ") Katherine Weatherly on April 6, 2017. *Id.* At the hearing, the Plaintiff amended her alleged onset date of disability to October 22, 2013. *Id.* On January 17, 2018, the ALJ issued a decision denying both of Plaintiff's claims for benefits. Tr. 65.

Plaintiff requested review of the hearing decision with the Appeals Council. Pl. Br. 5, ECF No. 17. Plaintiff obtained new counsel, and the Appeals Council allowed additional time for Plaintiff to submit new evidence. *Id.* Plaintiff submitted a Walmart pharmacy log tracking her prescriptions from January 1, 2013 through November 7, 2017 (Tr. 12-17); a medical opinion letter and medical source statement from Richard Browning, PMHNP completed January 9, 2018 (Tr. 18-24); and a Psychological Evaluation dated October 25, 2017 (Tr. 24-30) and a medical source statement dated May 25, 2018 (Tr. 31-34) provided by examining psychologist Scott Alvord. *Id.* The Appeals Council denied Plaintiff's request for review on June 15, 2018. Tr. 1-6. The Appeals Council stated that it "did not consider and exhibit [Plaintiff's additional] evidence"

---

[4] "Tr." Refers to the Transcript of Social Security Administrative record provided by the Commissioner.

because the Council found that the evidence did "not show a reasonable probability that it would change the outcome of the decision." Pl. Br. 5-6, ECF No. 17.

Thus, the ALJ's decision became the final decision of the Commissioner. Compl. 2, ECF No. 1.

## FACTUAL HISTORY

Plaintiff was born October 25, 1966. Tr. 247 Plaintiff's records describe a history of childhood and adult physical, emotional, and sexual abuse. *See, e.g.* Tr. 415, 471, 528, 531. Plaintiff graduated from high school. Tr. 86. Plaintiff worked in various jobs over the years, including as a cashier and as a deli clerk. Tr. 88. After losing her job in 2010, Plaintiff attempted to return to college from 2011-2012, but could not complete her course work because she struggled to "make it to classes with [her] health." Tr. 87. Plaintiff then consulted a doctor about her mental health issues. Tr 93.

Plaintiff lives in Eugene, Oregon with a cousin during the week, and stays with her ill mother in Drain, Oregon on weekends. Tr. 84. Plaintiff performs general house chores and some caretaking of her mother, although her mother can generally care for herself when alone. Tr. 85-86. About twice a month while at her mother's home, Plaintiff contacts her aunt to help, because both Plaintiff and Plaintiff's mother need assistance. Tr. 96. Plaintiff reported that she often remains at her mother's house longer than the weekend because Plaintiff experiences her own health problems and stays until she feels better. *Id.*

Plaintiff fell from a height of approximately six feet onto her right knee in 2007 or 2008, Tr. 91; Pl. Br. 8, ECF No. 17. She underwent arthroscopic knee surgery in November 2016, and a post-surgery steroid injection in December 2016, both with Jeffrey Tuman, M.D. Tr. 803, 784. At the hearing, Plaintiff testified that she continued to use crutches for walking, and motorized

carts when in stores, although Plaintiff did not use the crutches on the date of the hearing. Tr. 83, 94.

Plaintiff began treatment in October 2012 with Dr. Chaplin at PeaceHealth Medical Group for hypertension, fibromyalgia, and headaches. Tr. 458. Dr. Chaplin's notes report that Plaintiff was on psychiatric medications prescribed by a prior doctor at Oregon Medical Group, and had been for about three years, for anxiety and panic attacks, depression, and possibly bipolar disorder. Tr. 460. Dr. Chaplin diagnosed Plaintiff with anxiety state, unspecified; bipolar disorder with depression, panic disorder without agoraphobia; unspecified essential hypertension; asthma exacerbation, and insomnia on March 26, 2014. Tr. 479-89.

Kriz Topaz, LMFT, QMHP at Options Counseling, performed Plaintiff's Mental Health Assessment on November 21, 2014. Tr. 534-35. Plaintiff continued to receive counseling through Options for complaints of cycles of elevated mood, binge eating, racing thoughts, decreased need for sleep, and increased talkativeness and distractibility alternating with depressed mood, decreased interest in activities, fatigue, feelings of hopelessness and worthlessness, and inability to concentrate. Tr. 534. Plaintiff's depressive symptoms culminated in her complaints of "wanting to go to sleep and not wake up," on March 7, 2017. Tr. 771. Richard Browning, PMHNP at Options, managed Plaintiff's multiple psychotropic medications starting in January 2016. Tr. 727. Pl. Br. 10, ECF No. 17. Plaintiff continued to attend counseling at Options as of the date of her Administrative Hearing on April 6, 2017. Tr. 91.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). The five-step sequential

inquiry is summarized below, and as described in *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

<u>Step One</u>: The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two. 20 C.F.R. § 416.920(b).

<u>Step Two</u>: The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under step three. 20 C.F.R. § 416.920(c).

<u>Step Three</u>: Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis, despite limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945; *see also* SSR 96-8p, 1996 WL 374184.

<u>Step Four</u>: The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled.

If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 416.920(e), 416.920(f).

Step Five: The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to perform, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. § 416.920(g).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. If the claimant satisfies his burden with respect to the first four steps, the burden then shifts to the Commissioner regarding step five. 20 C.F.R. § 416.920(g). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.*

**THE ALJ'S FINDINGS**

The ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2014. Tr. 57.

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 22, 2013, the alleged onset date. *Id.*

At step two, the ALJ found the following severe impairments: morbid obesity, obstructive sleep apnea; asthma; RLS; bipolar disorder; unspecified anxiety disorder; panic disorder, migraines; fibromyalgia; type II diabetes; and status post right knee arthroscopy. *Id.*

At step three, the ALJ found that none of those severe impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 58. The ALJ next assessed Plaintiff with a RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations. The claimant can lift/carry 10 pounds frequently and 20 pounds occasionally. She can sit for about six hours out eight hours and stand/walk about six out of eight hours with regular breaks. She can occasionally climb ramps and stairs, balance, stoop, and crouch. She can never climb ladders, ropes, or scaffolds, kneel, or crawl. She must avoid concentrated exposure to pulmonary irritants as well as workplace hazards such as machinery and heights. The claimant can understand, remember, and carry out simple, routine, repetitive tasks and have occasional contact with the general public.

Tr. 59.

Proceeding to step four, the ALJ found that Plaintiff is unable to perform any past relevant work experience. Tr. 63.

At step five, the ALJ found Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as Photocopy Machine Operator, Marker, and Collator Operator. Tr. 64. The ALJ then found that Plaintiff had not been under a disability as defined by the Act, from October 22, 2013, the alleged onset date, through June 16, 2017, the date of the ALJ's unfavorable decision. Tr. 64-65.

## DISCUSSION

Plaintiff seeks review of the Commissioner's decision on the grounds that the decision is based on an insufficiently developed record, arguing that the Appeals Council improperly failed to consider her additional evidence. Pl. Br. 2, ECF No. 17. Plaintiff also argues that the ALJ's

opinion is not supported by substantial evidence and is premised on errors of law. *Id*. Plaintiff asks that the Court reverse and remand for immediate calculation of benefits, or alternatively, for reconsideration in light of the new evidence submitted by Plaintiff to the Appeals Council. *Id.*

First, Plaintiff's argues that the Appeals Council committed legal error in refusing to consider additional evidence submitted by Plaintiff after the ALJ's decision. Pl. Br. 13, ECF No. 17. Plaintiff argues that because the Appeals Council improperly rejected Plaintiff's additional evidence, the Court can now consider that evidence to determine whether the ALJ decision was supported by substantial evidence and free from legal error. *Id.* at 15. Plaintiff argues that, were the Court to consider the additional evidence, the Court would find that the ALJ's decision was not supported by substantial evidence, nor free from error. Plaintiff posits that the Court should then either remand the case for immediate calculation of benefits, or remand for further development of the record. *Id.* at 15-19.

Second, Plaintiff argues that the ALJ improperly credited the state medical doctors' opinions and discredited the Plaintiff's subjective testimony. This Court finds that the Appeals Council properly reviewed the Plaintiff's additional evidence and determined it would not review the ALJ decision. Thus, the ALJ's opinion became the final decision of the Commissioner. That decision is affirmed for the reasons discussed below.

**I.  APPEALS COUNCIL DENIED REVIEW OF THE ALJ DECISION.**

The Appeals Council had authority to decline review of the unfavorable ALJ decision and this Court may not review that decision.

**A. APPEALS COUNCIL STANDARD**

20 C.F.R. § 404.970, entitled "Cases the Appeals Council will review," states that the Appeals Council will review a case if, *inter alia*, it receives additional evidence that is new,

material, relates to the period prior to the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. § 404.970(a)(5).

The Appeals Council may look at, or alternatively, consider, additional evidence a plaintiff submits after the ALJ issues an unfavorable decision. *Ruth v. Berryhill*, Case No. 1:16-CV-0872-PK, 2017 WL 4855400, at *9 (D. Or. Oct. 26, 2017). The term "consider" is a term of art in the context of an Appeals Council denial for a request for review. *Id.* Evidence that the Appeals Council considers is incorporated into the administrative record. *Id.* Evidence that the Appeals Council looks at or reviews does not become part of the record, although the Appeals Council conducts a threshold evaluation to determine whether the evidence is relevant. *Id.* (internal citation omitted). This Court may not review additional evidence that the Appeals Council declines to consider and incorporate into the administrative record. *Id.*

Only when the Appeals Council fails totally to acknowledge the new evidence in accordance with the relevant regulations is remand to the ALJ appropriate. *Id.* at *10 (citing *Taylor*, 659 F.3d 1228, 1233 (9th Cir. 2011)). If the Appeals Council reviews a plaintiff's additional evidence but ultimately declines to review the ALJ decision, the ALJ's decision becomes the final decision of the Commissioner, subject to the substantial evidence review based on the record as a whole. *Ruth*, 2017 WL 4855400, at *8. Federal courts may not review Appeals Council decisions regarding plaintiff's requests for an Appeals Council review of an ALJ decision. *Taylor*, 659 F.3d at 1231.

## B. ANALYSIS

The Appeals Council denied Plaintiff's request for review of the ALJ's decision after declining to consider Plaintiff's additional evidence, finding there was no reasonable probability

that the additional evidence would change the outcome of the decision. Tr. 1-2. The Appeals Council did not err when it determined it would not consider Plaintiff's additional evidence after reviewing the evidence in accordance with applicable regulations. Because the Court may not review the Appeals Council decision, the ALJ decision became the final decision of the Commissioner.

Plaintiff argues that the Appeals Council erred in following the applicable regulations when reviewing plaintiff's new evidence. Pl. Br. 13, ECF No. 17. Plaintiff argues that she received a letter from the SSA dated March 24, 2017 regarding changes to ALJ hearing procedures. Pl. Br. 13. The letter notified Plaintiff that new rules regarding ALJ hearings would apply to hearings pending after May 1, 2017 or later. Tr. 72-73. Plaintiff's argues that because Plaintiff's hearing occurred prior to May 1, 2017, Plaintiff is subject to hearing rules in place as of April 6, 2017, not the newer rules that would apply to hearings after May 1, 2017. *Id.* Plaintiff then argues that, based on the SSA letter, prior rules concerning Appeals Council reviews should also be followed by this Court in considering whether the Appeals Council improperly rejected Plaintiff's evidence. *Id.* at 13-14 (citing 20 C.F.R. § 404.970(b) prior to its amendment on January 16, 2017).

Prior to January 16, 2017, 20 C.F.R. § 404.970(b) required the Appeals Council to consider additional evidence so long as the evidence was new, material, and related to the period on or before the date of the ALJ's decision. Under that version of the regulation, remand to the ALJ was appropriate if the Appeals Council failed to consider the evidence. *Edgecomb v. Berryhill*, Case No. 16-35990 (9th Cir., July 18, 2018) (quoting *Taylor*, 659 F.3d at 1233). Further, the Appeals Council was not permitted to decline consideration of the new evidence based on a finding that the new evidence showed no reasonable probability of changing the

outcome of the decision. 20 C.F.R. § 404.970(b) (prior to January 16, 2017 amendment). Only after the regulation's amendment became effective on January 16, 2017 was the Appeals Council permitted to review additional evidence to determine whether or not it presented a reasonable probability of changing the outcome of the ALJ's decision. *See* 20 C.F.R. § 404.970(b) (as amended).

Plaintiff conflates the SSA's new rules regarding ALJ hearings with the amended regulations to Appeals Council procedures. The SSA letter Plaintiff references states "[w]e are changing our regulations to make our Administrative Law Judge (ALJ) hearing procedures consistent nationwide. These rules apply to all hearing requests pending on May 1, 2017." Pl. Br. 13; Tr. 72. The new rules regarding ALJ hearings are distinct from the rules that apply to the Appeals Council. Plaintiff is subject to 20 C.F.R. § 404.970(b), as amended on January 16, 2017. Thus, the Appeals Council had authority to decline consideration of the additional evidence after determining that the evidence had no probability of changing the outcome of the decision. This Court can not review the Appeals Council decision. The ALJ's decision properly became the final decision of the Commissioner.

## II. THE ALJ BASED HER DECISION ON SUBSTANTIAL EVIDENCE.

The ALJ's decision is affirmed because the ALJ based her decision on substantial evidence in the record. The ALJ did not err in crediting the state's medical experts' opinions nor in discounting Plaintiff's subjective testimony.

### A. STANDARD OF REVIEW OF ALJ DECISIONS

This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla; it

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted); *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989). "The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing *Vidal v. Harris,* 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975)). "Where the evidence as a whole can support either a grant or a denial, [this Court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

## B. ANALYSIS

### 1. Medical provider opinions

#### a. Additional opinions of Dr. Alvord and Richard Browning, PMHNP

First, Plaintiff argues that the additional opinions of Dr. Scott Alvord and Richard Browning, PMHNP, both submitted by Plaintiff after the ALJ issued her decision, establish that the ALJ's decision is not supported by substantial evidence. Pl. Br. 15, ECF No. 17. However, for the reasons discussed above, those opinions are not part of the record. Therefore, this Court does not consider them.

#### b. Other Medical Sources and Agency Experts

As discussed above, the Court does not consider Mr. Browning's opinion offered after the ALJ decision. Mr. Browning supplies no opinion in the record regarding Plaintiff's disability.

"In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.'"

*Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see* 20 C.F.R. § 416.902(a),(d). Relevant statements from "other" medical sources are competent evidence that can not be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2014). The opinion of a treating provider who does not qualify as an acceptable medical source may nonetheless be given greater weight than the opinion of a treating provider who does so qualify, depending on an evaluation of certain factors. *Revels v. Berryhill*, 874 F.3d at 655 (outlining factors identified in 20 C.F.R § 416.927(f)(1)). Those factors include the length of treating history, the number of times the provider treated the claimant, if the treating medical source provided better evidence and explanation for her opinion, or an opinion more consistent with the evidence of the record as a whole, and whether the treating medical source provided a specialist opinion. *Id.* To reject "other" medical source statements, the ALJ must provide germane reasons supported by substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Although Mr. Browning, PMHNP, "was in charge of [Plaintiff's] psychotropic medication management for more than a year prior to the hearing," the record contains only cursory references to Mr. Browning prescribing Plaintiff's medication. *See, e.g.,* Tr. 697. No narrative notes from Mr. Browning are present in the record. Mr. Browning provides no treatment notes, and thus there is no opinion from Dr. Browning that conflicts with the state agency expert Megan Nicoloff, Psy.D. *See, e.g.,* Tr. 697. While Mr. Browning signed Plaintiff's treatment notes every month, his entries in the record do not conflict with the Dr. Nicoloff's opinion that Plaintiff retains the capacity to understand and remember instructions for basic tasks, can sustain concentration and persistence in completing basic tasks at a steady pace, and can complete predictable routines and cope with the usual demands and changes in such a

setting. Tr. 62. The ALJ found Dr. Nicoloff's uncontradicted opinion consistent with the Plaintiff's mental health records as a whole and gave it great weight. *Id.*

Additionally, Plaintiff argues that the state's medical expert, Peter Bernardo, M.D., was improperly afforded great weight by the ALJ because Dr. Bernardo did not have access to critical information when he issued his opinion April 20, 2015. Pl. Br. 16, ECF No. 17; Tr. 169. Specifically, Plaintiff states that Dr. Bernardo rendered his opinion before Plaintiff's knee surgery in November 2016. Plaintiff argues that Dr. Tuman's surgical findings "strongly support [Plaintiff's] ongoing lower extremity complaints." *Id.* Plaintiff acknowledges that the ALJ had access to Dr. Tuman's notes and that the ALJ reviewed Plaintiff's June 2016 knee X-Ray. Pl. Br. 16, n. 5, ECF No. 17.

The ALJ does note that Plaintiff's treatment records during the adjudicatory period show that Plaintiff complained of flare ups of knee pain. Tr. 61. The ALJ recounts that Plaintiff's June 2016 preoperative knee X-ray showed mild degeneration, and that Plaintiff reported decreased pain and increased functioning with physical therapy in November 2016. *Id.* The ALJ notes that the record contained no opinion supporting greater limitations than those suggested by Dr. Bernard, who opined Plaintiff could perform at a light exertional level. Tr. 63. The ALJ did not err in relying on the record and the uncontradicted opinion of Dr. Bernardo.

**2. Plaintiff's Subjective Testimony**

The ALJ did not err in discounting Plaintiff's subjective testimony. The agency employs a two-step process to evaluate a claimant's symptoms. *Molina v. Astrue*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). The Plaintiff need only show that her impairment

could cause some degree of the symptom; she need not prove the severity or degree of the symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ may not reject Plaintiff's subjective testimony as to the degree of symptoms as long as some objective evidence is produced of an underlying impairment. *Id.*

If a Plaintiff presents objective evidence of impairment, the ALJ must next find either affirmative evidence of malingering, or give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms. *Id.* (internal citations and quotations omitted). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ found that Plaintiff did provide objective evidence of mental health impairments. Tr. 60. The ALJ did not find evidence of malingering. *See* Tr. 59-60. Thus, the ALJ must provide specific, clear and convincing reasons for rejecting claimant's testimony.

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective symptoms concerning her mental limitations when the ALJ opined that Plaintiff responded positively to counseling and medications. Pl. Br. 17, ECF No. 17. Plaintiff contends that the ALJ chose isolated statements from the record, at times when Plaintiff "clearly was attempting to adopt a positive attitude," and that the record as a whole shows Plaintiff suffers significant, ongoing mental health issues. *Id.*

To the extent that the ALJ discounts Plaintiff's subjective testimony, she provides clear and convincing evidence for doing so. Tr. 59-61. The ALJ's opinion does not rest on isolated findings that Plaintiff only suffers from mild symptoms. *See id.* Rather, the ALJ provides clear and convincing reasons for finding that the Plaintiff's statements concerning the intensity,

persistence, and limiting effects of her mental symptoms are not entirely consistent with the medical and other evidence. While the record shows Plaintiff does suffer from multiple mental health issues, the ALJ found that the record indicates that the Plaintiff's symptoms are generally mild to moderate and improve with treatment. Tr. 60. The ALJ provides a detailed, chronological recounting of Plaintiff's mental health symptoms, medical and psychological therapies, and the Plaintiff's responses to those therapies. Tr. 60-61. For instance, the ALJ notes

> [t]he record documents that the claimant's mental impairment symptoms increase at times but also that these increases related to situational stressors (such as the break-up of an intimate relationship) and that the claimant [is] able to manage her symptoms and return to baseline. (Ex. 5F-20). For example, although the claimant reported significant mental and physical symptoms in February 2014, she had also been without health insurance and had not had any medical treatment since around April 2013. (Ex. 3F-4). January 2015 office chart notes indicate that the claimant was stressed due to "having to put her ex-boyfriend in jail several days ago" but that her mental health counseling at Options was "very helpful." (Ex. SF-3). At that time, she also reported that an increase in medication (Effexor) improved her symptoms. (Ex. SF-4). In February 2015 she reported that is [sic] was "somewhat difficult to function" but also that her PHQ-9 score was only 10 out of 27. (Ex. 8F-5). At that time, she reported that her depression and anxiety were a 4 on a scale of 1 to 10 and that she was not crying as often. (Ex. 5F-12, -13).

*Id.*

The ALJ's opinion is comprehensive in relating Plaintiff's subjective mental health complaints and comparing them to treatment modalities and objective findings in the chart, such as Plaintiff's self-report that by February 2016 she only used anxiety medication "very infrequently." Tr. 61.

The ALJ's clear and convincing reasons provide legally sufficient bases for discounting Plaintiff's subjective testimony. The ALJ properly considered the Plaintiff's testimony and issued an opinion based on substantial evidence.

## CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's opinion was the final decision of the Commissioner. The ALJ based her opinion on substantial evidence and this Court AFFIRMS the Commissioner's final decision.

IT IS SO ORDERED.

DATED this 19th day of November 2019.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI<br>
United States Magistrate Judge